UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| MICHAEL PAUL MATUSZCZAK, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | NO. 2:16CV183-PPS |
|  | ) |  |
| MIRAMED REVENUE GROUP LLC, | ) |  |
|  | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

This is a Fair Debt Collection Practices Act case concerning two telephonic statements made by a debt collector concerning a medical debt owed by the plaintiff, Michael Matuszczak. A representative of the debt collector, Miramed Revenue Group, offered Matuszczak a discount on the debt he owed, but misstated the amount of the discount by 45 cents. When Matuszczak indicated that he couldn't pay the debt even with the discount, Matuszczak was told that the matter could be turned over to an attorney. Matuszczak claims that the 45 cent error and the mention of a lawyer were violations of the FDCPA. I think otherwise, and will grant Miramed's motion for summary judgment.

**Background**

Let's start with the facts which are entirely undisputed. Miramed Revenue Group collects medical debt on behalf of clients like St. Margaret Mercy Hospital.

Plaintiff Michael Matuszczak owed St. Margaret money. This case doesn't begin where most FDCPA cases begin — a harassing phone call from a debt collector. The script was flipped here: the debtor, Matuszczak, called the debt collector, Miramed. According to Matuszczak, his call to Miramed was prompted by an entry he had noticed on his credit report. So he called the company to inquire and spoke with a customer service representative named "Dineta." Dineta confirmed with Matuszczak that he did indeed have an outstanding balance of $3,494.44 owed to St. Margaret Mercy Hospital. [DE 21-3 at 2.] It is entirely unclear from the record how Matuszczak knew to call Miramed when the debt was with St. Margaret. But in any event, Matuszczak does not dispute that he owes this amount of money or that Miramed was authorized by St. Margaret to collect it.

The conversation between Dineta and Matuszczak did not end with confirmation of the debt. Dineta told him that Miramed would settle his debt at a 20% discount and Matuszczak would have to pay only $2,796.00. [DE 21-3 at 3.] Of course, 20% off of $3,494.44 is not precisely $2,796.00 — the amount Dineta told him Miramed would accept. It's $2,795.55. So Dineta was off by 45 cents. It is obvious that Dineta simply rounded up from $2,795.55 to $2796.00.

Even with the discount, Matuszczak evidently couldn't afford to pay the debt. He told Dineta that he was trying to get disability. She responded that it "is it a way that you can take advantage of the settlement because they have been looking to forward the account over for legal activity as well." *Id.* After some discussion, Dineta again asked Matuszczak if he could make a payment today. *Id.* at 4. After saying no,

Dineta responded, "Okay well like I informed you it is a possibility that the account can be turned over to our attorneys as well ... ok no problem." *Id.*

The call ended, but Matuszczak was apparently confused about Dineta's answers because he called right back. [DE 21-4 at 2.] He asked Dineta what it meant that the debt will go through collections. *Id.* She explained, "it looks like it is already reported to your credit report and then we are going to review it and see if it can go over to our attorneys and let our attorneys handle the file. This is one of our clients that do pursue legal activities on that account." *Id.* Matuszczak asked for more clarification. Dineta said, "we will have to send it to the attorneys if it's ... suitable if the account can be forwarded to the attorneys and let them ... collect on that balance." When Matuszczak asked "what's the attorneys going to do to me," Dineta answered, "Well I don't know, once it goes to the attorney it's no longer in our hand." *Id.* Matuszczak says that Dineta's statements are violations of the FDCPA. Discovery has closed, and Miramed now seeks summary judgment.

## Discussion

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the Court construes "all facts and reasonable inferences from the record in the light most favorable to [ ] the non-moving party." *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 900 (7th Cir. 2005).

Matuszczak has two remaining claims against Miramed under the FDCPA.[1] First, he claims that Miramed's rounding of the settlement offer violates §§ 1692e and 1692f because it's a false and misleading or deceptive statement and, second, he argues that Miramed threatened legal action that it wasn't authorized or didn't intend to take in violation of §§ 1692e(5) and 1692d.

By enacting the FDCPA, Congress sought to eliminate abusive debt collection practices by debt collectors. 15 U.S.C. § 1692(e). Section 1692e of the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representations or means in connection with the collection of any debt." *Id.* § 1692e. The prohibition is phrased in general terms, but § 1692e also lists specific conduct that violates the law, including falsely representing "the character, amount, or legal status of any debt." *Id.* § 1692e(2)(A). Also prohibited is the "use of any false representation or deceptive means to collect or attempt to collect any debt," *id.* § 1692e(10), and making a "threat to take any action that cannot legally be taken or that is not intended to be taken," *id.* § 1692(e)(5).

Several other provisions of the FDCPA proscribe certain actions debt collectors may take, two of which are relevant here. Under § 1692d, debt collectors "may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse

---

[1] Matuszczak initially alleged three separate claims under the Fair Debt Collection Practices Act following the call with Miramed. He has since indicated to the court that he does not plan to pursue his second claim – that the Miramed representative failed to identify herself as a debt collector on the second call – and the parties do not address this issue in their briefs. [*See* DE 19.]

any person in connection with the collection of a debt." *Id.* § 1692d. Debt collectors additionally may not use unfair or unconscionable means to collect or attempt to collect a debt. *Id.* § 1692f.

I'll start with the 45 cent misstatement. Matuszczak admits that Miramed gave him the correct number when it provided the amount of money he owed — $3,494.44. He claims, however, that Miramed made a false and deceptive representation when it told him that it would accept 20% off the amount due but then told him the new amount owed would be $2,796.00. No one can argue with the math. As I explained earlier, the reduced offer was technically off by 45 cents, which in all likelihood was the result of rounding up, since a 20% reduction comes out to $2,795.55. According to Matuszczak, this alleged misstatement is false, deceptive, or misleading and constitutes an unfair or unconscionable means to collect a debt. In reality, the difference is a trifle.

A debt collector's conduct is not false, deceptive, or misleading, nor is it unfair or unconscionable, simply because there is something technically false in the communication. In determining whether a debt collector's conduct violates the FDCPA, I have to view the representation through the eyes of the "unsophisticated consumer." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009). "If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA – even if it false in some technical sense." *Id.* at 645-46. A statement cannot mislead unless it is material. *Hahn v. Triumph P'ship LLC*, 557 F.3d 755, 758 (7th Cir. 2009).

It's worth explaining a little bit about the "unsophisticated consumer." He "isn't a dimwit." *Wahl*, 556 F.3d at 645. Although he's "uninformed, naive, [and] trusting,"

he has "rudimentary knowledge about the financial world" and he "is capable of making basic logical deductions and inferences." *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) (internal quotation marks and citations omitted). Matuszczak has to show that the settlement offer would mislead this unsophisticated consumer; he can't win simply by showing that the settlement offer is false in a technical sense.

So would an unsophisticated consumer be misled by Miramed's settlement offer? The Seventh Circuit has addressed a number of situations that it found were non-material and thus not misleading, most of which involved the way in which a debt collector broke down principal versus interest. In *Hahn v. Triump Partnerships LLC*, the debt collector characterized the principal and interest in a way that was arguably false. Although the Seventh Circuit held that the statement presented in that case was not false (it was really true), it also held that difference between principal and interest was immaterial because it was "no more important ... than the color of the paper" that the creditor used. 557 F.3d at 757. The court distinguished reporting interest in one line item versus another with something that would inflict a real harm, such as applying the incorrect rate of interest. *Id.*

Certainly the way the creditor breaks down the principal versus the interest, or the color of the paper used by a creditor, is different than incorrectly calculating the amount of money Matuszczak would have to pay to settle his account with Miramed. Other circuits have addressed overstatements of debt owed. In *Powell v. Palisades Acquisition XVI, LLC*, the creditor overstated the debt by $3,930.78 – more than 50%. This overstatement was clearly material. 782 F.3d 119 (4th Cir. 2014). Similarly, in

*Afewerki v. Anaya Law Group*, the Ninth Circuit held that an overstatement of the plaintiff's debt by $3,000, and the interest rate by 0.315%, was material. 868 F.3d 771 (9th Cir. 2017).

But there is a world of difference between $3,000 and 45 cents. The misstatement here represents merely 0.012877599% of the total debt owed. That's a far cry from the 50% overstatement in *Powell*. A district court in this Circuit recently addressed a nearly identical set of circumstances. In *Gilmore v. Unlimited Progress Corp.*, the creditor clearly and accurately stated the total debt, but overstated the settlement offer by 70 cents, which represented 0.15% of the total debt. No. 1:16-cv-5216 (N.D. Ill. Oct. 4, 2016). The district court sensibly found that this was immaterial.

Viewing this misstatement from the perspective of the unsophisticated consumer, I find that not even the most unsophisticated of consumers could be misled by a 45 cent rounding error, given the total amount of debt. Let's be pragmatic. Such a trivial misstatement simply could not have been important to an unsophisticated consumer in making a decision as to how to respond to Miramed's efforts to the collect the debt. And it surely could not affect whether an unsophisticated consumer would pay the debt. That makes it immaterial. Any reasonable person with the most basic, rudimentary knowledge of the financial world, but with the ability to make logical deductions and inferences, would recognize the number Dineta provided was the result of rounding. This means that it's not objectively misleading or deceptive.

Recognizing that 45 cents is a trivial amount, Matuszczak argues that the misstatement is material because a reasonable debtor would worry that one false

statement would breed another and he claims that the misstatement caused him to question Miramed's intention to work with him to resolve his debt. Tellingly, Matuszczak points to no case law to support his theory. The Seventh Circuit has been clear that we are not to entertain a plaintiff's "bizarre, peculiar, or idiosyncratic interpretation[s]" under the unsophisticated consumer standard. *McMillan v. Collection Prof'l Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). This argument, based on a chain of assumptions, cannot turn a mere 45 cents into a material misstatement. Because the misstatement is not material, it does not violate §§ 1692e(5) or 1692f.

Matuszczak's second claim is that Miramed violated §§ 1692e(5) and 1692d when its representative notified Matuszczak that it could refer the debt to an attorney. As a preliminary matter, under the terms of § 1692e(5), in order to be actionable, Miramed's statements must actually constitute a threat to take legal action. To threaten legal action, Miramed's statements must communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has already been made. *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1136 (N.D. Ill. 1998). Even indirect or oblique statements can be actionable, provided they imply legal action is underway or is contemplated in the near future. *Id.* To evaluate Matuszczak's claim, I again must view Miramed's statements from the perspective of the unsophisticated consumer. *Id.*; *see also Ruiz v. Midland Credit Mgmt., Inc.*, No. 2:11-cv-32, 2012 WL 33016, at *3 (N.D. Ind. Jan. 6, 2012).

The statements made by Miramed on the call with Matuszczak would not make an unsophisticated consumer believe that a decision to pursue legal action is either

imminent or has already been made. Miramed did not indicate that it had already initiated legal action, nor did it communicate to Matuszczak — directly or indirectly — that if he did not pay his debt, legal action would be imminent. The representative simply conveyed that referral to an attorney was a possibility, and merely suggesting that legal action is a possibility is not a threat. *See Jenkins*, 999 F. Supp. at 1136. The closest Dineta came to threatening legal action is when she said that Miramed had "been looking to forward the account over for legal activity as well." But even this statement falls short of imminent, particularly when viewed in the context of Dineta's other statements indicating that it was only a possibility that the account would be forwarded for legal activity and that Miramed was still looking into whether the debt would be handed over to an attorney. Therefore, because Miramed's statement was not a threat to take legal action, Matuszczak's claim fails.

But it's of no matter because even if I were to find that Miramed's statements constituted a threat, Matuszczak's claims would still fail because he has put forth absolutely no evidence that Miramed was not authorized to take legal action. To the contrary, Miramed has submitted a sworn affidavit, which Matuszczak does not challenge, stating that it possesses the authority to refer the debt to a lawyer. [DE 21-1 at 3 ¶11.] In light of this undisputed statement, Matuszczak is left arguing essentially this: Miramed didn't intend to take legal action because it wouldn't make sense to. He couldn't pay the debt since he had no assets, making a default judgment against him meaningless. Thus, the only reasonable explanation for the "threat" is to scare Matuszczak into paying the debt immediately. But again, Matuszczak has put forth

zero evidence that Miramed didn't intend to do exactly what its representative said on the call. This is fatal to his claim because, at the summary judgment stage, the plaintiff must provide something more than "some metaphysical doubt as to the material facts." *Nat'l Inspection & Repairs, Inc. v. George S. May Intern. Co.*, 600 F.3d 878, 882 (7th Cir. 2010) (quoting *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008)). Matuszczak has failed to do so.

For the same reasons, Matuszczak also cannot show that Miramed's statements violated § 1692d because Miramed did not "engage in any conduct the natural consequence of which [was] to harass, oppress, or abuse any person in connection with the collection of a debt." There was no threat on Miramed's part, and even if there was a threat, the only threats made were ones which Miramed could legally take.

**Conclusion**

Miramed Revenue Group's Motion for Summary Judgment [DE 20] is GRANTED with respect to Counts One and Three. All claims are hereby DISMISSED. The Clerk should enter judgment in favor of Miramed and against Paul Matuszczak on all counts accordingly.

**SO ORDERED.**

ENTERED: November 13, 2017

/s/ Philip P. Simon
Philip P. Simon, Judge
United States District Court